UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JENNIFER BAUGHAM McCLENNY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. _____ |
| THE REALREAL, INC. ) | |
| ) | COMPLAINT |
| Serve: ) | |
| C T Corporation System ) | JURY TRIAL DEMAND |
| 4701 Cox Road, Suite 285 ) | |
| Glen Allen, VA 23060 ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT**

Plaintiff Jennifer Baugham McClenny ("Plaintiff" or "Mrs. McClenny"), by counsel, and for her Complaint against The RealReal, Inc. ("Defendant" or "TRR"), states as follows:

1. This is an action for damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*. ("Title VII") and the Virginia Human Rights Act ("VHRA"), Va. Code § 2.2-3905.1 and 2.2-3908, for discrimination on the basis sex (female) and pregnancy. Mrs. McClenny seeks additional damages arising from TRR's interference with her rights under the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), as well as retaliation for her attempt to exercise of said rights.

## PARTIES AND RELEVANT NON-PARTIES

2. At all relevant times, Plaintiff Mrs. McClenny was an adult resident of Herndon, Virginia. She is currently a resident of Haymarket, Virginia.

3. Mrs. McClenny is a member of a protected class as she is female and was pregnant at all times relevant to her allegations.

4. Defendant The RealReal, Inc. ("TRR") is a Delaware corporation registered to conduct business in Virginia.

5. TRR operates an online marketplace for the authenticated resale of luxury goods.

6. TRR operates in Virginia and employed Mrs. McClenny in Virginia.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under a federal statute.

8. This Court has supplemental jurisdiction over the state law claims set forth in this complaint pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

10. Defendant TRR is subject to this Court's jurisdiction as it conducts business within this judicial district.

# FACTS

11. Mrs. McClenny worked for TRR from April 15, 2019 to August 30, 2022 as a Luxury Manager and, subsequently, an Account Luxury Manager, and a Senior Account Luxury Manager.

### *Mrs. McClenny's Accomplishments at TRR*

12. Throughout Mrs. McClenny's employment at TRR, she received only positive performance reviews and never received any disciplinary action.

13. Over the years she continuously outperformed her sales goals and was promoted to the role of Senior Account Luxury Manager in January 2022.

14. For example, in 2021, Mrs. McClenny achieved Gold Luxury Level Status, having met 105.4% of her sales goals.

15. In addition, she was the highest performing member of her Green Club team.

16. In 2022, prior to her termination, Mrs. McClenny's management described her in the following terms in her performance review:

> **Describe the employee's overall impact**
> **Jenny is helpful to her peers, consignors and manager by always being willing to lend a hand. Jenny always makes team members feel good about themselves and that mistakes happen. Jenny is thoughtful in her feedback to her managers and can be counted on to get behind the cause and push through challenges. Jenny is a hustler and always gets the job done, keep up the great work Jenny!**

17. TRR also recognized Mrs. McClenny for her achievement of bringing in the rarest and mostly highly valued item in TRR history, a $455,000.00 Patek Philippe—one of only 24 such watches known to exist.

*Mrs. McClenny's Initial Complaints to Human Resources*

18. In or around February 2022, Mrs. McClenny informed her manager at TRR of her pregnancy.

19. In the weeks that followed, Mrs. McClenny began to experience new and unwarranted scrutiny of her work.

20. Despite continuing to meet and exceed all of her performance goals, TRR management placed extraordinary pressure on her to increase her sales while simultaneously cutting her commission and pay.

21. Mrs. McClenny contacted Human Resources on at least four different occasions to complain about the less favorable treatment she experienced after disclosing the fact of her pregnancy to TRR.

22. On February 23, 2022, Mrs. McClenny talked to her manager, her second-level manager, and third-level manager about the harsh working conditions she was being subjected to.

23. Mrs. McClenny informed her managers at this meeting that she was experiencing pregnancy complications, that her doctor feared she may be having a miscarriage, and advised her to reduce stress in her life to the greatest extent possible.

24. Mrs. McClenny asked her managers if anything could be done to reduce her workload or to alter her work responsibilities to reduce the heavy lifting and physical strain attendant to her position.

25. Her managers responded that unpaid FMLA leave was the only option they were willing to provide.

26. At this meeting, Mrs. McClenny's managers also reassured her that discrimination against Mrs. McClenny based on her pregnancy was unacceptable and promised to address the issue.

27. Mrs. McClenny saw limited improvement in her working conditions in the days immediately after that call. This improvement was short-lived and TRR's mistreatment of Mrs. McClenny resumed shortly after.

28. Despite knowledge of Mrs. McClenny's condition and the advice of her doctor to reduce her stress, the pressure Mrs. McClenny's managers placed on her and their undue scrutiny of her work only amplified and worsened after this meeting.

### *Mrs. McClenny Requests Maternity Leave and Intermittent Medical Leave*

29. Mrs. McClenny subsequently discussed with TRR her maternity leave and the possibility of intermittent FMLA leave to be used in the weeks leading up to the birth of her child based on pregnancy-related medical complications.

30. Mrs. McClenny informed TRR of her expected due date, September 30, 2022.

31. On or about August 24, 200., Mrs. McClenny received notice from TRR's benefits administrator, the Larkin Company ("Larkin"), laying out the terms of her requested leave.

32. Larkin approved intermittent FMLA-covered leave for Mrs. McClenny to begin on August 30, 2022 and run until September 30, 2022.

33. Larkin also approved FMLA-covered maternity leave scheduled to begin from the date of her baby's birth through six weeks postpartum.

*TRR Terminates Mrs. McClenny's Employment*

34. On or about August 30, 2022, only six days after Larkin approved her maternity leave, Jill Abramson ("Abramson"), Mrs. McClenny's second-level manager, questioned her about aspects of her work which had never before been a source of concern.

35. Abramson levied unfounded concerns against Mrs. McClenny and accused her of improperly inflating her sales numbers.

36. Abramson called Mrs. McClenny later the same day, informed her that she had been terminated by TRR effective immediately and that her health insurance coverage would end two days later, on September 1, 2022.

37. Abramson hung up on Mrs. McClenny before she had a chance to speak.

38. TRR's allegations against Mrs. McClenny were pretextual. TRR's decision to terminate Mrs. McClenny arose instead from discriminatory and retaliatory animus.

39. TRR's actions left Mrs. McClenny unemployed and without health insurance coverage on the same date her ability to use intermittent FMLA-covered leave had been approved to begin.

40. TRR terminated Mrs. McClenny exactly one month before she gave birth and with the knowledge she intended to take FMLA-covered leave in the weeks that followed the birth of her child.

**Exhaustion of Administrative Remedies**

41. On February 27, 2023, Mrs. McClenny timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on sex and pregnancy and retaliation.

42. The EEOC cross-filed that charge of discrimination with the Prince William County Office of Human Rights.

43. On September 14, 2023, the Prince William County Office of Human Rights transferred Mrs. McClenny's charge back to the EEOC for issuance of a Notice of Right to Sue.

44. The EEOC issued Mrs. McClenny a Notice of Right to Sue on October 10, 2023.

45. Ms. McClenny now timely files this Complaint within ninety (90) days from the issuance of the Notice of Right to Sue by the EEOC.

### COUNT I
### Sex and Pregnancy Discrimination in Violation of Title VII
### 42 U.S.C. § 2000 *et seq*.

46. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

47. Mrs. McClenny is a member of two protected class as a female and as someone who was pregnant at the times relevant to the instant complaint.

48. TRR, upon learning of Mrs. McClenny's pregnancy, targeted her for increased scrutiny and harassment.

49. Prior to learning of Mrs. McClenny's pregnancy, TRR had only given her positive reviews and feedback.

50. TRR terminated Mrs. McClenny's employment on August 30, 2022, just six days after TRR's third-party benefits administrator approved her maternity leave.

51. TRR terminated Mrs. McClenny's employment on the same day her ability to use intermittent FMLA-covered leave related to pregnancy complications had been approved to begin.

52. TRR terminated Mrs. McClenny and caused the almost immediate cessation of her health insurance coverage just one month prior to the birth of her child and with knowledge of the serious pregnancy complications from which she continued to suffer.

53. TRR's stated reasons for terminating Mrs. McClenny's employment were pretext for discriminatory animus against her based on her sex (female) and pregnancy.

54. As a direct and proximate result of the willful, knowing, and intentional discrimination against Mrs. McClenny, she has suffered emotional and mental distress, anguish, and indignation. Mrs. McClenny is thereby entitled to general and compensatory damages in an amount to be proven at trial.

55. As a direct and proximate result of the acts and conduct of TRR alleged herein, Mrs. McClenny has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

56. TRR's actions constitute gross, wanton, malicious, reckless, and/or intentional violations of Plaintiff's rights, thus entitling her to punitive damages.

**COUNT II**
**FMLA Interference**
**29 U.S.C. § 2615(a)(1)**

57. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

58. Pursuant to the FMLA, it is illegal for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).

59. On August 24, 2022, TRR's third-party benefits administrator approved Mrs. McClenny to use intermittent FMLA-covered leave related to pregnancy complications beginning August 30, 2022.

60. On that same date, TRR's benefits administrator approved Mrs. McClenny for six weeks of FMLA-covered maternity leave beginning on the date of the birth of her child.

61. TRR, upon learning of Mrs. McClenny's pregnancy and in anticipation of her need for maternity leave in February 2022, targeted her for increased scrutiny and harassment.

62. TRR terminated Mrs. McClenny's employment on August 30, 2022, just six days after TRR's third party benefits administrator approved her maternity leave.

63. TRR's termination of Mrs. McClenny occurred on the same date her intermittent FMLA-covered medical leave had been scheduled to begin, and just one month prior to the start of her FMLA-covered maternity leave.

64. TRR's actions prevented Mrs. McClenny from using any of the FMLA-covered leave for which she had been approved.

65. TRR terminated Mrs. McClenny to prevent her from exercising her right to unpaid medical leave under the FMLA to which she had been found to be entitled.

66. As a result of TRR's conduct, Mrs. McClenny is entitled to any wages, salary, employment benefits, or other compensation denied or lost to her by reason of its FMLA violation with interest, as well as an equal amount of liquidated damages.

## COUNT III
## FMLA Retaliation
## 29 U.S.C. § 2615(a)(2)

67. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

68. The FMLA prohibits an employer from retaliating against an employee for attempting to exercise their rights under the statute pertaining to medical leave. 29 U.S.C. § 2615(a)(2).

69. Mrs. McClenny engaged in activity protected under the FMLA when she sought, and was approved for, intermittent FMLA-covered medical leave related to pregnancy complications scheduled to begin on August 30, 2022.

70. Mrs. McClenny engaged in activity protected under the FMLA when she sought, and was approved for, FMLA-covered maternity leave scheduled to begin on September 30, 2022.

71. TRR terminated Mrs. McClenny's employment on August 30, 2022, just six days after TRR's third party benefits administrator approved her maternity leave.

72. TRR's termination of Mrs. McClenny occurred on the same date her intermittent FMLA-covered medical leave had been scheduled to begin.

73. TRR terminated Mrs. McClenny in retaliation for her exercise of her rights under the FMLA.

74. As a result of TRR's conduct, Mrs. McClenny is entitled to any wages, salary, employment benefits, or other compensation denied or lost to her by reason of its FMLA violation with interest, as well as an equal amount of liquidated damages.

## COUNT IV
### Sex and Pregnancy Discrimination in Violation of the VHRA
### Va. Code § 2.2-3905.1 and § 2.2-3908

75. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

76. Mrs. McClenny is a member of two protected class as a female and as someone who was pregnant at the times relevant to the instant complaint.

77. Upon learning of Mrs. McClenny's pregnancy, TRR targeted her for increased scrutiny and harassment.

78. Prior to learning of Mrs. McClenny's pregnancy, Mrs. McClenny TRR only provided her with positive reviews and feedback.

79. TRR terminated Mrs. McClenny's employment on August 30, 2022, just six days after TRR's third party benefits administrator approved her maternity leave.

80. TRR terminated Mrs. McClenny's employment on the same day her ability to use intermittent FMLA-covered leave related to pregnancy complications had been approved to begin.

81. TRR terminated Mrs. McClenny and caused the almost immediate cessation of her health insurance coverage just one month prior to the birth of her child and with knowledge of the serious pregnancy complications from which she continued to suffer.

82. TRR's stated reasons for terminating Mrs. McClenny's employment were pretext for discriminatory animus against her based on her sex (female) and pregnancy.

83. As a direct and proximate result of the willful, knowing, and intentional discrimination against Ms. McClenny, she has suffered emotional and mental distress, anguish,

and indignation. Ms. McClenny is thereby entitled to general and compensatory damages in an amount to be proven at trial.

84. As a direct and proximate result of the acts and conduct of TRR alleged herein, Ms. McClenny has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

85. TRR's actions constitute gross, wanton, malicious, reckless, and/or intentional violations of Plaintiff's rights, thus entitling her to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mrs. McClenny requests this Court enter judgment in her favor and further:

(a) Award Mrs. McClenny compensatory damages, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery; and in addition

(b) Award Mrs. McClenny punitive damages in an amount not to exceed $350,000.00 based on her claims arising under Title VII and the Virginia Human Rights Act; and in addition

(c) Award Mrs. McClenny liquidated damages as may be permitted by law; and in addition

(d) Award Mrs. McClenny attorneys' fees, expert fees, and costs of this action as may be permitted by law; and in addition

(e) Award Mrs. McClenny such other and further relief as may be appropriate.

## JURY DEMAND

**PLAINTIFF JENNIFER BAUGHAM McCLENNY DEMANDS A TRIAL BY JURY.**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Jennifer Baugham McClenny demands a trial by jury.

Dated:       January 7, 2023                                Respectfully,

                                                        /s/
Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA  22201
Tel:     (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
            kherrmann@erlichlawoffice.com